# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CRAIG TOLONEN,<br><br>　　　　　　　　Petitioner,<br>v.<br><br>BRIAN FOSTER and SCOTT M. ECKSTEIN,<br><br>　　　　　　　　Respondents. | Case No. 16-CV-1431-JPS<br><br><br><br><br>**ORDER** |

On October 25, 2016, Craig Tolonen ("Tolonen") filed this petition pursuant to 28 U.S.C. § 2254, asserting that his state court conviction and sentence were imposed in violation of the Constitution. (Docket #1). On November 16, 2016, the Court denied Tolonen's motion for leave to proceed without prepayment of the $5.00 filing fee. (Docket #11). On December 22, 2016, the Court dismissed the petition for Tolonen's failure to pay that fee. (Docket #14). On January 9, 2017, the Court received the full $5.00 fee for Tolonen's petition, submitted on his behalf by his brother, Eric Tolonen. Tolonen himself then moved to reopen the case, which the Court permitted. (Docket #19).

In reopening the case, the Court also screened the petition pursuant to Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts. *Id.* at 1. The Court found that found there are significant questions as to whether Tolonen's petition is timely, whether he properly exhausted his remedies in state court, and whether some or all of his claims are procedurally defaulted. *Id.* at 2–5. As a result, the Court ordered the parties to submit briefing on these procedural issues. *Id.* at 5.

Currently pending are several motions filed by Tolonen. The Court will address each motion in turn.

**1.     Tolonen's Motion for Appointment of Counsel**

First, Tolonen has filed a motion for appointment of counsel. (Docket #24). As a civil litigant, Tolonen has no automatic right to court-appointed counsel. *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997). However, under 28 U.S.C. § 3006A(a)(2), the court may appointment counsel if "the interests of justice so require." The court should seek counsel to represent the petitioner if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular [petitioner's] capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. banc 2007)); *see also Evans v. Thurmer*, No. 09–C–0494, 2010 WL 3279378, at *1–2 (E.D. Wis. Aug. 19, 2010) (applying *Pruitt* test to request for appointment of counsel in habeas proceedings). The Seventh Circuit has emphasized that "[t]he question is not whether a lawyer would present the case more effectively than the pro se [petitioner]; 'if that were the test, district judges would be required to request counsel for every indigent litigant.'" *Pruitt*, 503 F.3d at 655 (quoting *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir.2006)) (internal quotation omitted). Instead, "[t]he question is whether the [petitioner] appears competent to litigate his own claims, given their degree of difficulty[.]" *Id.*

Tolonen cites several reasons he believes counsel should be appointed to represent him at this time, but none are availing. First, he claims he has the intellect of an eighth-grader and that he suffers from learning disabilities. *Id.* at 2. Although Tolonen avers that these things are true, he offers little

corroborating evidence. *See Henderson v. Ghosh*, 755 F.3d 559, 566 (7th Cir. 2014) (noting sources showing the inmate's below-average IQ, fifth-grade education, and functional illiteracy). The only evidence he submitted in connection with this motion is a letter from his former special education teacher about his limitations in reading and understanding, *see* (Docket #24-1), but the letter is from 2007 and therefore does not give a clear picture of Tolonen's capabilities today, ten years later. Nor does the letter show that he is functionally unable to cope with the demands of litigation, despite an apparent need to read and write slowly.[1]

Second, Tolonen argues that he needs counsel because his case will require complex expert testimony, discovery relating to a past Wisconsin state-court prosecution, and post-conviction DNA testing. *Id.* at 2–3. But Tolonen is putting the cart before the horse: however complex may be the merits of this case, the present questions before the Court concern procedural matters only. *See* (Docket #19). Tolonen does not suggest that such matters, standing alone, are beyond his ken. Thus, the Court concludes that appointment of counsel is not warranted at this time, and the motion will be denied without prejudice.

## 2. Tolonen's Motion for Leave to Proceed Without Prepayment of Filing Fee

Tolonen also filed another request for leave to proceed without prepayment of the filing fee. (Docket #26). He has already paid the fee,

---

[1] The Court notes that Tolonen also submitted other materials related to his capacity as part of a separate motion relating to discovery. *See* (Docket #31-1). The reasons that those materials are insufficient to warrant Tolonen's requested discovery, as explained further below, equally demonstrate that Tolonen has not shown a lack of capacity to prosecute this case. *See infra* Part 3.

however, and it will not be refunded to him. He seems to offer this motion to show that he is indigent, which he believes in turn supports his request for counsel. While his inability to afford counsel is a necessary condition for the appointment thereof, it is not a sufficient one. *Pruitt*, 503 F.3d at 655. As demonstrated above, other factors militate against the appointment of counsel at the present time.

**3.     Motions for Leave to Conduct Discovery and DNA Testing**

Tolonen's other motions request leave of the Court to conduct discovery. (Docket #28, #29, and #31). He wants to seek discovery of the case file in a 2006 criminal action in Washington County Circuit Court as well as post-conviction DNA testing of a washcloth entered as evidence against him at his trial. Both of these discovery requests relate to the merits of Tolonen's petition. To reiterate, the Court has not reached that juncture. Unless and until it finds that Tolonen has cleared the procedural hurdles that appear to block his path, the Court will not consider discovery requests relating to the merits of the petition. *See United States ex rel. Erickson v. Shomig*, 162 F. Supp. 2d 1020, 1056 (N.D. Ill. 2001) ("[D]iscovery in a federal habeas case is not available to resuscitate an otherwise procedurally barred claim[.]"); *see also Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (finding that unlike other civil litigants, a habeas petitioner is not entitled to discovery as a matter of course); *Hubanks v. Frank*, 392 F.3d 926, 933 (7th Cir. 2004) (noting that a petitioner must show "good cause" supporting a proposed discovery request in habeas proceedings).

Additionally, Tolonen requests leave to obtain a mental examination of himself. (Docket #31). He relies on *Davis v. Humphreys*, 747 F.3d 497, 500 (7th Cir. 2014), which holds that mental incompetence can sometimes justify

equitable tolling of the statute of limitations for habeas petitions. Because timeliness and equitable tolling may be among the procedural issues addressed in the upcoming briefing, Tolonen reasons, he must be permitted leave to obtain a mental examination to assess his competency. (Docket #31 at 1–2). He contends that his mental competency has "played a major role in not properly following court procedure in the past." *Id.* at 2.

*Davis* does not compel Tolonen's sought-after result. In that case, the prisoner presented a ten-year-old report showing that his IQ was 49—well below the threshold for a diagnosis of intellectual disability. *Humphreys*, 747 F.3d at 500. Yet even this evidence was not enough on its own to convince the Seventh Circuit that equitable tolling was appropriate. *Id.* The court observed that "[i]t is improper to leap from one IQ test to a conclusion that a particular person is unable to understand and protect his own legal interests." *Id.* Also of note to the court was the fact that the petitioner did not challenge his conviction on the ground of his incompetence, thereby suggesting that he was competent at or around the time he should have endeavored to timely file his petition. *See id.* The Circuit court remanded the matter back to the district court for further inquiry into the petitioner's competence without articulating a standard for assessing when mental competence is deficient enough to warrant equitable tolling. *Id.*

Here, Tolonen claims that his IQ is 80, citing a individualized education program assessment conducted in 2001, when Tolonen was in high school, and a psychological evaluation performed in 1998, when Tolonen was in eighth grade. (Docket #31-1). The educational assessment says that Tolonen was operating at below grade level at the time but that part of the problem was not Tolonen's intellect but his failure to attend school or

complete homework. *Id.* at 1. The 1998 psychological evaluation placed Tolonen in the "Low Average" range when compared to his peers. *Id.* at 3. It also shows that in prior assessments, he fell within the "Average" range of intelligence. *Id.* The evaluation even cautions that because Tolonen did not put forth much effort on the day of the evaluation, that "it is believed that [Tolonen's] previous cognitive assessments are a better indicator of his intellectual skills." *Id.* Thus, the evaluator concludes that Tolonen actually possesses "average intellectual skills" despite needing academic support. *Id.*

This evidence, considered alongside the 2007 letter from one of Tolonen's special education teachers, discussed above in connection with Tolonen's motion for counsel, does little to show that Tolonen suffers from the kind of mental deficiencies or disorders that would justify equitable tolling. The Seventh Circuit suggested in *Humphreys* that the mental competency required to warrant equitable tolling would have to be low indeed, noting that "even persons with serious mental disabilities may have enough concrete awareness to be able to waive constitutional rights." *Humphreys*, 747 F.3d at 500. The Court does not find that the aging evidence Tolonen presents at this time warrants the evidentiary inquiry he requests. This is particularly true since the 1998 assessment itself indicates that Tolonen had at least "average intellectual skills." (Docket #31-1 at 3); *Boulb v. United States*, 818 F.3d 334, 340 (7th Cir. 2016) (no evidentiary hearing on competency required where petitioner proffered only conclusory assertion of mental disability with unexplained supporting assessment). Moreover, the operative question here is "the competence of the prisoner or an agent. . .before the year [for filing the petition] is up," not what Tolonen's abilities were when he was an adolescent. *Id.* at 498. Tolonen admits that "he does not

know what his competency determination was or is at present." (Docket #31 at 2).

Nor is it enough for Tolonen to vaguely gesture at the possibility that mental incompetence may have prevented the timely filing of his petition. To justify tolling on this basis, Tolonen needs to show that his mental competency in fact caused the untimely filing. *See Carpenter v. Douma*, 840 F.3d 867, 872 (7th Cir. 2016); *Obriecht v. Foster*, 727 F.3d 744, 750–51 (7th Cir. 2013). The bald statement that his mental competency "played a major role" in his untimely submissions, (Docket #31 at 2), does not appear to carry that burden, particularly in the absence of other competent evidence of his disabilities. Further, the Court notes that, like the petitioner in *Humphreys*, here Tolonen has not challenged his conviction on competency grounds. His only two allegations are that his *Miranda* rights were violated and that he is actually innocent of the crime for which he was convicted. *See* (Docket #1 at 6–8). At most, Tolonen claims in his petition that he and his counsel tried to emphasize during the prosecution that he was "intellectually slow" and "impressionable," not incompetent. (Docket #2 at 5, 10).

In sum, the Court finds that Tolonen has not shown good cause for any of his requested discovery at this time. His motions in this regard will therefore be denied without prejudice.[2]

---

[2]Given that there are several potential procedural infirmities in Tolonen's petition, the Court may not need to reach the matter of equitable tolling at all. Assuming it does, the Court will entertain a renewed request from Tolonen for an evidentiary hearing on his competency. Such a request must, however, be supported by evidence sufficient to warrant the hearing.

Accordingly,

**IT IS ORDERED** that Petitioner's motion for appointment of counsel (Docket #24) be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Petitioner's motion for leave to proceed without prepayment of the filing fee (Docket #26) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that Petitioner's motions related to discovery (Docket #28, #29, and #31) be and the same are hereby **DENIED without prejudice**. The matters raised therein may be addressed in a later motion should the Court find that procedural bars do not prevent consideration of the merits of Petitioner's petition.

Dated at Milwaukee, Wisconsin, this 2nd day of March, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge