# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CRAIG TOLONEN, <br><br> Petitioner, <br> v. <br><br> SCOTT M. ECKSTEIN, <br><br> Respondent. | Case No. 16-CV-1431-JPS <br><br> **ORDER** |

On January 18, 2017, the Court screened Petitioner Craig Tolonen's ("Tolonen") petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases. (Docket #19). The Court found that it was subject to a number of procedural infirmities, including untimeliness, exhaustion of state remedies, and procedural default. *Id.* The Court ordered further briefing on those procedural issues, which was completed on April 27, 2017. *See* (Docket #34, #38). Respondent confirmed the Court's suspicions that Tolonen's petition is both late and procedurally defaulted. *See* (Docket #34).

Tolonen does not contest these facts. *See* (Docket #38 at 9–18). Instead, Tolonen clings to his final hope for a merits review of his petition— the "actual innocence gateway." *Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2015).[1] Initially, the Court notes that Tolonen raises two grounds for relief. His first is for a violation of his *Miranda* rights. (Docket #1 at 6–7). The

---

[1] As noted above, Tolonen's petition is both untimely and procedurally defaulted. The actual innocence gateway was traditionally applied only to procedural default. However, the Supreme Court has recently held that its existence skirts nearly any procedural problem, including untimeliness. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931–32 (2013). Because the actual innocence analysis applies to both procedural issues equally, the Court will not differentiate between the two in its discussion below.

second ground is that he is actually innocent of his crime. *Id.* at 7. Innocence is not a stand-alone ground for relief in a case like Tolonen's, so that portion of the petition must be dismissed. *Gladney*, 799 F.3d at 895; *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013); *Herrera v. Collins*, 506 U.S. 390, 400 (1993).[2] The Court must instead consider whether the actual innocence gateway allows Tolonen's *Miranda* claim to continue despite his procedural failings.

*Gladney* provides a succinct explanation of the actual innocence doctrine:

> In federal habeas law, the actual innocence exception is one application of the broader "fundamental miscarriage of justice" exception to procedural default intended to ensure that federal constitutional errors do not result in the incarceration of innocent persons. The Supreme Court has made clear that this exception covers all sorts of procedural defaults[.]
>
> The actual innocence gateway is narrow. Gladney's procedural default can be excused only if he "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." [*Schlup v. Delo*, 513 U.S. 298, 316 (1995)]. Gladney must show that "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537. . .(2006)[.]

---

[2]The Supreme Court once hinted that a "truly persuasive" showing of innocence might suffice as a freestanding claim to avoid execution in a capital case. *Herrera*, 506 U.S. at 417. But, of course, this is not the case envisioned in *Herrera*. *See McQuiggin*, 133 S. Ct. at 1931; *Schlup*, 513 U.S. at 314. Notably, Tolonen's actual-innocence claim is not that his sentence is constitutionally intolerable despite being provided a fair trial, as explained in *Jones v. Calloway*, 842 F.3d 454, 462 (7th Cir. 2016). Rather, he alleges that errors during trial led to his conviction. (Docket #1 at 7–8). This sort of claim cannot stand alone.

> Gladney's gateway claim of actual innocence under *Schlup* could be viable only if he presents evidence not previously considered. Such new evidence can take the form of any "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *See Schlup*, 513 U.S. at 324[.] The reviewing court then considers the total record—"all the evidence, old and new, incriminatory and exculpatory"—and makes "a probabilistic determination about what reasonable, properly instructed jurors would do." *House*, 547 U.S. at 538[.] It is not the role of the court to "make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id.*

*Gladney*, 799 F3d at 895–96.

Tolonen's evidence of actual innocence should be compelling to warrant relief, but it is thin and unpersuasive. The primary thrust of his argument is that he could, if appointed counsel in this proceeding, obtain the testimony of two experts in shaken-baby deaths. These two individuals would, according to Tolonen, opine that the injuries sustained by the infant Tolonen killed were inconsistent with shaking, thereby exonerating him. (Docket #38 at 11–12). But Tolonen provides none of their actual testimony—not even an affidavit from either person stating that they would, if counsel was appointed, offer an opinion, regardless of what it might ultimately be. Instead, he relies entirely on his own averment that these individuals would testify on his behalf. He then proceeds to speculate as to what the contents of their opinions might be, all the while conceding that he does not actually know what they would say. *Id.*[3]

---

[3]Tolonen's beliefs as to what these experts might testify to appear to be based on a law-review article he attached to a motion for an evidentiary hearing which accompanied his brief. *See* (Docket #42-1). If Tolonen's hope for helpful testimony is grounded solely in the assertions in that article, and not on some case-

This presentation is surely insufficient to fall within the narrow actual innocence gateway. To meet his threshold burden, Tolonen was required to come forward with some new evidence of his innocence. His own lay speculation about what two experts might say is not evidence, much less the sort of evidence that would disturb this Court's confidence in the outcome of Tolonen's trial. *Blackmon v. Williams*, 823 F.3d 1088, 1099 (7th Cir. 2016) (showing actual innocence requires "new, reliable evidence, that 'in light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt'") (quoting *Coleman v. Hardy*, 628 F.3d 314, 319 (7th Cir. 2010)).

Nor can Tolonen hold this Court hostage by claiming that he needs counsel appointed before these experts will testify. He was required to put forward evidence of his innocence, and based on the Court's earlier findings, Tolonen did not need counsel's aid to do this. Again, apart from Tolonen's own speculation, the Court has no reason to believe that these experts would actually have participated in this proceeding or that their testimony would support Tolonen's claim for relief.

The balance of Tolonen's "evidence" is likewise unavailing. For instance, Tolonen complains that this Court denied his requests to propound discovery on Respondent. (Docket #34 at 14). Yet discovery in habeas proceedings is rarely undertaken, particularly when such a specious claim of actual innocence is raised. *See Hubanks v. Frank*, 392 F.3d 926, 933 (7th Cir. 2004). Moreover, Tolonen does not explain how his proposed discovery requests would have meaningfully contributed to demonstrating

---

specific discussion he has had with these experts, his position weakens even further.

his innocence. As a result, the Court remains unconvinced that such discovery is necessary or appropriate. *See United States v. Volpentesta*, No. 14 C 50343, 2015 WL 4545215, at *6 (N.D. Ill. July 27, 2015) (dismissing conclusory assertions that discovery would reveal grounds supporting actual innocence).

Finally, Tolonen offers uncorroborated, unsworn claims that various witnesses to the relevant events lied and that the infant's injuries were inconsistent with being shaken. (Docket #38 at 15–16). Again, these are not the type of assertions that meet the "demanding" standard enunciated in *Schlup*, which permits a court to excuse procedural infirmities "only in the 'extraordinary' case." *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327); *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (noting that actual-innocence gateway requires "powerful" evidence and rejecting conclusory assertion that prosecution's eyewitnesses might have been unreliable). Moreover, this evidence is not new, as it was presented to and rejected by the Wisconsin Court of Appeals. (Docket #39-2 at 7–8). Additionally, the vast weight of the evidence introduced at trial—including Tolonen's own confession and expert testimony by a physician who treated the infant before she died—undermines the purportedly contrary evidence Tolonen has tried to present here, leaving a very low likelihood that Tolonen's evidence would have had an effect on jury's verdict. *House*, 547 U.S. at 538.

As a result, the Court finds that Tolonen has not sustained a claim of actual innocence, nor made even a preliminary showing warranting further development through discovery or an evidentiary hearing. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (observing that the decision to grant an evidentiary hearing is within the trial court's discretion); *Boyko v. Parke*, 259 F.3d 781, 790 (7th Cir. 2001) (holding that discovery or evidentiary hearings

should not be allowed in the district court in Section 2254 cases where the petitioner failed to develop the sought-after facts in state court, unless those facts would establish innocence by clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(2)). Because actual innocence does not allow Tolonen to circumvent the procedural infirmities the Court identified above, the Court must dismiss Tolonen's petition on those grounds.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Tolonen must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). Further, when the Court has denied relief on procedural grounds, the petitioner must show that jurists of reason would find it debatable both that the "petition states a valid claim of the denial of a constitutional right" and that "the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As the Court discussed above, no reasonable jurists could debate whether Tolonen's petition was timely, whether he was in procedural default as to his claim, or whether he presented colorable evidence supporting an "actual innocence" gateway to a merits review. As a consequence, the Court is compelled to deny him a certificate of appealability.

Finally, the Court closes with some information about the actions that Tolonen may take if he wishes to challenge the Court's resolution of

this case. This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within thirty (30) days of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See id.* 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *Id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Accordingly,

**IT IS ORDERED** that Petitioner Craig Tolonen's petition for a writ of habeas corpus (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Petitioner's motion for leave to proceed without prepayment of the filing fee (Docket #33) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Petitioner's motion for an evidentiary hearing (Docket #42) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Petitioner's motion for appointment of counsel for purposes of an evidentiary hearing (Docket #43) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 13th day of June, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge